IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

PAMELA MOYE AND MICHELLE CARTER, )
)
                Plaintiffs, )
)
         v. )     1:06CV00337
)
DUKE UNIVERSITY HEALTH SYSTEM, )
INC., )
)
                Defendant. )

**RECOMMENDATION OF MAGISTRATE JUDGE ELIASON**

This case comes before the Court on Defendant's motion to stay the action pending arbitration or dismiss the complaint for lack of subject matter jurisdiction and improper venue. Defendants claim that Plaintiffs must pursue their claims in arbitration pursuant to Defendant's Dispute Resolution Policy. Upon consideration of the parties' arguments, and for the reasons discussed below, the Court recommends that Defendant's motion to compel arbitration and stay the proceedings pending arbitration be granted. The Court declines to address Defendant's alternative motion which has not been sufficiently fleshed out to enable a ruling. It should, thus, be denied.

**Facts**

Plaintiffs Moye and Carter are employed by defendant Duke University Health Systems ("DUHS") in the Pathology Department. In that department, Ms. Moye, a DUHS employee since 1981, is the Office Coordinator for medical transcriptionists, and Ms. Carter, a DUHS employee since 1998, is the Senior Medical Transcriptionist. Both plaintiffs are African American or black. On January 26,

2005, Plaintiffs' attorney sent a letter to their supervisor, Earl Buck, alleging that DUHS pays higher wages to white medical transcriptionists. The DUHS Office of Counsel, not Buck, responded to both Plaintiffs' original letter and a follow-up sent February 26, 2005 by rejecting Plaintiffs' claim on the merits. Neither response from DUHS made any reference to any internal Dispute Resolution Policy.

On March 31, 2005, both Ms. Moye and Ms. Carter filed charges with the Equal Employment Opportunity Commission ("EEOC"), again alleging racially discriminatory compensation by DUHS. The EEOC did not find a violation and issued Plaintiffs a right to sue letter on January 24, 2006. Plaintiffs then filed this lawsuit in state court on March 31, 2006 alleging a violation of federal law, i.e., 42 U.S.C. §§ 2000d and 2000e-2(a). Defendant removed the case to this Court on the ground that the suit involved a federal question within the original jurisdiction of this Court. 28 U.S.C. § 1331.

In the motion now before the Court, Defendant apparently for the first time makes reference to a DUHS Dispute Resolution Policy. This policy, which Defendant alleges is a condition of Plaintiffs' continued employment with DUHS, contains a clause requiring binding arbitration of all claims arising out of or relating to Defendant's employment policies. Defendant further alleges (1) that the scope of the arbitration clause encompasses the present dispute and (2) that Plaintiffs agreed to be bound by the policy, including the arbitration clause, both by their signatures on DHUS Employee

Acknowledgment Sheets and by their continued employment with Duke.

In response, Plaintiffs assert that they did not agree to arbitrate their disputes, and that, regardless of any agreement, the clause does not apply to their claim. They also claim that the September 15, 2005 Dispute Resolution Policy does not apply to their claim because it arose prior to the new policy and that Defendant waived its right to arbitrate by failing to assert rights under the new policy for more than a year after becoming aware of Plaintiffs' claim.

## **Discussion**

When a party moves to compel arbitration, two basic questions must be answered. The first is whether there is an enforceable agreement to arbitrate, and the second is whether the agreement encompasses a particular dispute. Both are decisions for the Court.[1] In determining whether a dispute falls within the purview of an arbitration clause, this Court complies with the Supreme Court's "healthy regard for the federal policy favoring arbitration." Moses H. Cone Memorial Hosp. v. Mercury Constr. Co.,

---

[1] The Court makes the determination of whether there is an agreement to arbitrate. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985). In deciding who determines scope of the agreement, however, courts must employ a "reverse presumption," i.e., that the parties agreed for a court to decide the question unless the contracts "'clearly and unmistakably'" provide that the arbitrator must decide which issues are arbitrable. Carson v. Giant Food, Inc., 175 F.3d 325, 329 (4th Cir. 1999) (quoting AT&T Techs., Inc. v. Communications Workers of America, 475 U.S. 643, 648-49 (1986)). In the instant case, the Dispute Resolution Policy is silent concerning who must decide which issues are arbitrable and the parties have not presented any evidence of their intent. Therefore, the "reverse presumption" requires the Court, and not the arbitrator, to decide the scope of the arbitration clause.

-3-

Case 1:06-cv-00337-NCT-WWD   Document 9   Filed 12/13/06   Page 3 of 16

460 U.S. 1, 24-25 (1983). The Supreme Court also holds that "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Id. Therefore, this Court may not deny a motion to compel arbitration unless there is no enforceable arbitration agreement between the parties or "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83 (1960). With these principles in mind, the Court examines the arbitration clause at issue in the present case.

Plaintiffs first assert that no valid arbitration agreement exists between the parties. Specifically, Plaintiffs claim that they did not agree to the DUHS 2005 Dispute Resolution Policy which Defendant seeks to invoke. For this claim, they assert that it is significant that they did not sign any agreement accepting the policy, nor did they ever receive a copy of the policy itself. Additionally, Plaintiffs contend that the policy's procedures are inapplicable to their claims because these procedures were not in effect until after their claims arose.

Despite their assertions to the contrary, Plaintiffs did agree to arbitrate their claim. First, each Plaintiff signed an "Employee Acknowledgment Sheet" as part of her employment contract with DUHS. Ms. Moye signed and dated this form on January 14,

1992, and Ms. Carter did the same on October 5, 1998.  These documents represent each Plaintiff's specific acknowledgment that she received, among other things, a copy of the DUHS Employee Grievance Procedure and Employee Handbook.  The Grievance Procedure supplied on that date, like the Dispute Resolution Policy currently used by DUHS, explains that employment disputes are subject to binding arbitration.  Further, the Employee Handbook explains that personnel policies are subject to change and that employees may obtain information regarding such changes from the Office of Human Resources.

Under applicable North Carolina law, both the delivery of an employee handbook at the time of initial hiring and the requirement of an acknowledgment signature are evidence that an employment contract under the handbook's terms was formed.  See Paschal v. Myers, 129 N.C. App. 23, 29, 497 S.E.2d 311, 315 (1998).  Therefore, Plaintiffs' signed acknowledgment of DUHS personnel policies, including an arbitration clause and notice that the policies were subject to change, is evidence of an agreement to abide by them.  Plaintiffs' continued employment after receiving actual notice of the DUHS grievance procedures may also indicate their assent to the policy's terms.  See Hightower v. GMRI, Inc., 272 F.3d 239, 243 (E.D.N.C. 2001); see also King v. Oakwood Homes Corp., No 1:99CV00549, 2000 WL 1229753, at *5 (M.D.N.C. Aug. 3, 2000)("Continued employment with actual notice of the implementation of a dispute resolution program evidences an employee's mutual assent to the binding arbitration agreement

-5-

contained therein."). Notwithstanding, Plaintiffs claim that, even if they assented to Defendant's grievance policy when they were hired, they are not bound by the revised 2005 DUHS dispute resolution procedures. Specifically, Plaintiffs claim that notice of the new procedures was defective because they did not specifically acknowledge, by signing, any subsequent changes. They also argue that the revised policy does not apply to this case because their discrimination claim arose before the new policy became effective in September 2005.

Plaintiffs' arguments fail on three grounds. First, there is no evidence that DUHS arbitration procedures actually changed when the general grievance policy was revised in 2005. Absent change, notice is irrelevant. Second, even if the 2005 policy did alter Defendant's arbitration requirements, Plaintiffs received adequate notice of any changes in light of their earlier acknowledgment signatures and Duke's widely-published notices.[2] Finally, the plain language of the 2005 policy indicates that its procedures apply to *all* disputes arising out of the parties' employment relationship, not just future disputes. Therefore, the timing of the policy does not affect its applicability to this case.

Defendant has done a less than satisfactory job in explaining the arbitration policy as it relates to Plaintiffs. Prior to 2005, there were two grievance procedures - one for exempt employees, another for non-exempt. Both concluded with binding arbitration.

---

[2]They had previously acknowledged that policies could change and that employees may obtain information about the changes from Human Resources.

-6-

(Kornberg Aff. ¶ 4-5.) Defendant states that on September 15, 2005, it adopted an amended procedure which applied to both types of employees and created "more opportunities to resolve issues informally at the department level." (Kornberg Aff. ¶ 6.) However, Defendant fails to specifically address these new "opportunities" and explain how they affected the duty to arbitrate. It never clearly states that the new combined plan merely continued the arbitration requirement for Plaintiffs. Yet, some of the evidence it presents strongly suggests this. For example, Plaintiffs admit that Duke "published notices of its new 2005 Dispute Resolution Policy in Duke News & Communications, the *Duke Dialogue*, *Inside Duke University Medical Center & Healthsystem*, which is an employee newsletter, and *The Chronicle*, which is a Duke newspaper." (Pls.' Opp. Mem. at 8.) The final sentence in all but one[3] of these published notices states: "Disputes regarding certain issues such as involuntary termination that cannot be resolved through these steps may go forward *as they do currently* to an arbitration hearing conducted by the American Arbitrators Association." (See Def.'s Mot. to Stay Ex. 1C)(emphasis added). This language clearly indicates that "certain issues" were subject to arbitration prior to 2005. In fact,

---

[3] The language of *The Chronicle* article is somewhat different from the other notices, but the message is not. That article states that "in accordance with the original policy, particularly sensitive disputes" will be handled by the American Arbitrators Association.

-7-

Defendant's memoranda and supporting case law[4] evidence the same. These sources also indicate that issues including discrimination and involuntary termination remain subject to arbitration under the current Dispute Resolution Policy. In short, since there were no material changes or additions to the 2005 arbitration procedures, whether Plaintiffs received notice of changes to informal procedures is inapposite. However, because Defendant never directly makes this fact evident, the Court will examine the other two grounds for denying Plaintiffs' arguments.

Even if DUHS did significantly modify its arbitration procedures in 2005, Plaintiffs have not shown lack of notice of these changes. Most notably, as Defendant points out, Plaintiffs do not deny that they saw Defendant's published notices regarding its new Dispute Resolution Policy.[5] Plaintiffs also admit that several (if not all) of these notices mentioned the new policy's arbitration provision. They argue, however, that, according to the notices, arbitration only extended to involuntary termination, not to their discrimination claims. Again, the plain language of the

---

[4]Defendant's motion includes a number of unpublished opinions from the Middle and Eastern Districts of North Carolina as exhibits. Eight of these cases, ranging in time from 1996 to 2006, discuss enforcement of DUHS arbitration agreements in employment disputes. According to these opinions, Defendant's grievance procedures contained an arbitration provision prior to September 15, 2005 which encompassed federal age discrimination claims. See St. Clair v. Duke University, No. 5:99CV127BO2, 1999 WL 1939975, at *2 (E.D.N.C. 1999). While no cases specifically discuss the Grievance Policy as it relates to race discrimination, the Court finds it highly unlikely that the policy would extend arbitration to one form of discrimination under the federal law but not another.

[5]Of course, by now they clearly have had notice while they were still employed.
-8-

publications indicates otherwise.  <u>See also</u> note 5.  Each notice states that disputes regarding issues "*such as* involuntary termination" will be resolved through arbitration.  (emphasis added.)  If DUHS intended to limit the scope of its arbitration clause to involuntary termination alone, it need not have included the phrase "such as" in its description of the terms.  These two words clearly put Plaintiffs on notice that the new arbitration provision extends to a wider array of claims.  Such notice was more than sufficient when considered with Plaintiffs' express prior knowledge (1) that personnel policies are subject to change and (2) that employees may obtain information regarding such changes from the Office of Human Resources.

Further, as mentioned previously, both Ms. Moye and Ms. Carter continued working for Defendant after receiving notice of changes to their employment terms in 2005.  Knowing that assent to these terms was a condition of continued employment, both Plaintiffs have chosen to remain with DUHS.  Under North Carolina contract law, this evidences an intent to be bound by the modified employment contract terms.  <u>Howard v. Oakwood Homes Corp.</u>, 134 N.C. App. 116, 121, 516 S.E.2d 879, 882 (1999); <u>cf.</u> <u>King</u>, 2000 WL 1229753, at *5 (continued employment is insufficient evidence of mutual assent to arbitrate only where actual notice is lacking).  Having assented to the 2005 Dispute Resolution Policy, including the arbitration clause, Plaintiffs must now abide by it.

Plaintiffs next argue that any agreement to arbitrate under the 2005 Dispute Resolution Policy only extends to disputes arising

-9-

on or after September 15, 2005. Because the events underlying Plaintiffs' dispute arose before that date, they claim that the 2005 policy does not apply. Even assuming, arguendo, that no arbitration clause encompassed Plaintiffs' claim under Defendant's earlier grievance policy,[6] the 2005 policy should be given effect in this case. While the Fourth Circuit has never directly addressed the issue of whether an arbitration agreement may apply retroactively, other courts have held that parties may be compelled to arbitrate pre-existing claims in "certain circumstances." Hendrick v. Brown & Root, Inc., 50 F. Supp. 2d 527, 536 (E.D. Va. 1999). The key factors in determining whether an arbitration agreement applies are the nature of the relationship between the parties and the language of the provision in question. Id.; see also Balmer & Co., Inc. v. U.S. Fidelity and Guaranty Co., 1998 U.S. Dist. LEXIS 17175, *13 (E.D. Pa. 1998). Arbitration is most appropriate for pre-existing claims when the parties have an ongoing contractual relationship and when the contract language does not specifically limit arbitration to future claims. Hendrick, 50 F. Supp. 2d at 536-37.

The present case meets both of these criteria. Plaintiffs have ongoing relationships with DUHS under their employment contracts, and from the time these relationships began, Plaintiffs were aware that their contracts, including the grievance policy,

---

[6] If the arbitration agreement in an earlier version of the DUHS grievance policy already required arbitration of Plaintiffs' claim, it is irrelevant whether the new policy should be given retroactive effect.

-10-

could be modified. Therefore, when a modification took place in 2005, it became part of the pre-existing contract. Further, the language of the revised policy does not indicate that it is limited to future claims. Specifically, it applies to "[a]ny claim arising out of or relating to employment policies." Together with the strong federal policy in favor of arbitration, these factors merit a retroactive application of the arbitration agreement in this case.

Having settled that the 2005 Dispute Resolution Policy generally applies to employment disputes between DUHS and its employees, the Court must now determine whether the policy's arbitration clause applies to Plaintiffs' particular claim. Plaintiffs argue that the 2005 changes requiring binding arbitration cover claims of involuntary separation, sexual harassment, and sexual discrimination, but not claims of racial or other discrimination.

The policy section of DUHS's 2005 Dispute Resolution Policy states, in pertinent part, that:

> [a]ny claim arising out of or relating to employment policies shall be settled in accordance with this procedure. The arbitration step of this procedure shall be governed by the United States Arbitration Act. Both the staff member and Duke are required to utilize this procedure to resolve disagreements falling within the scope of this procedure.

The imperatives "shall" and "required" indicate that employees do not have the option of initiating a lawsuit for *any* employment-related claim. From this, it appears that Plaintiffs' employment discrimination claim must be settled according to the policy terms.

-11-

Plaintiffs argue, however, that the language of the policy's arbitration section is more limited. That section states:

> If the decision that is rendered as a result of the Dispute Panel Review leaves the dispute unresolved and the dispute relates to or involves involuntary separation, or includes allegations of sexual harassment or discrimination the staff member may request an arbitration hearing.

Plaintiffs claim that the word "sexual" in this context clearly modifies both harassment and discrimination, thereby precluding their allegation of racial discrimination from the policy's scope. The Court rejects the notion that such an interpretation is "clear." In fact, standing by itself, the language of the arbitration clause is ambiguous.

On the other hand, an examination of the policy's panel review stage provision supports a finding that all discrimination claims are subject to arbitration. The panel review provision, located immediately prior to the policy's arbitration clause, provides special treatment for "involuntary separation, or allegations of harassment or discrimination." These are the same disputes which are singled out for arbitration in the next section. Thus, it would appear that the word "sexual" added in the following arbitration section was an inadvertent insertion. Of course, while not likely, it is still remotely possible that the employer, for some unknown reason, wanted only to allow arbitration of sexual discrimination claims, even though all discrimination claims

required special post-panel decision processing.[7] To the extent there is an ambiguity, the Court must apply the relevant legal presumptions as to ambiguous terms.

Contract law generally provides that any ambiguous terms in a contract will be construed against the drafter. See, e.g., Gates, Hudson & Assoc., Inc. v. Fed. Ins. Co., 141 F.3d 500, 502 (4th Cir 1998). When the contract in question is an arbitration agreement, this rule conflicts with the rule that "any ambiguities in the language of the [employment] agreement should be resolved in favor of arbitration." Moses H. Cone Memorial Hosp., 460 U.S. at 24-25. In the present case, for example, the drafter of the agreement is also the party seeking arbitration, making it impossible to apply both presumptions.

While the Fourth Circuit has never directly discussed this problem, the First Circuit recently held in Kristian v. Comcast Corp., 446 F.3d 25, 35 (1st Cir. 2006), that "[w]here the federal policy favoring arbitration is in tension with the tenet of contra preferentum for adhesion contracts, and there is a scope question at issue, the federal policy favoring arbitration trumps the state contract law tenet." See also Hendrick, 50 F. Supp. 2d at 533 (holding the same). Here, where (1) any ambiguity clearly relates to the scope of Defendant's arbitration clause, and (2) the contract is not decidedly one of adhesion, this solution is

---

[7] This conclusion is unlikely considering that an earlier version of the arbitration clause extended to age discrimination claims. See St. Clair, 1999 WL 1939975, at *2.

particularly appropriate.  Therefore, the phrase "allegations of sexual harassment or discrimination" should be and is interpreted broadly to encompass the present claim.

Plaintiffs' final argument alleges that Defendant waived any right to arbitration by waiting for over a year to assert it. During this time period, Plaintiffs pursued their claim through the DUHS Office of Counsel, the EEOC, and the instant action.  They argue that the delay, coupled with a requirement to "start all over" through the grievance procedures, would prejudice them.

As stated previously, the strong federal policy favoring arbitration also applies when the court considers allegations of waiver, delay, or other defenses to arbitrability.  Moses H. Cone Memorial Hosp., 460 U.S. at 24-25.  Generally, a party waives its right to arbitrate only if it "so substantially utilizes the litigation machinery that to subsequently permit arbitration would prejudice the party opposing the stay."  MicroStrategy, Inc. v. Lauricia, 268 F.3d 244, 249 (4th Cir. 2001).  "[T]he dispositive question [for the courts] is whether the party objecting to arbitration has suffered actual prejudice."  Id.(quoting Fraser v. Merrill Lynch Pierce Fenner & Smith, Inc., 817 F.2d 250, 252 (4th Cir. 1987)).  Plaintiffs, as the party opposing arbitration, bear the heavy burden of proving that actual prejudice exists. Microstrategy, 268 F.3d at 250.

"Prejudice . . . refers to the inherent unfairness--in terms of delay, expense, or damage to a party's legal position--that occurs when the party's opponent forces it to litigate an issue and

later seeks to arbitrate that same issue." American Reliable Ins. Co. v. Stillwell, 212 F. Supp. 2d 621, 628 (N.D. W. Va. 2002)(quoting Doctor's Assocs. v. Distajo, 107 F.3d 126, 134 (2d Cir. 1997)). No single factor will establish actual prejudice. Microstrategy, 268 F.3d at 249. Instead, the court must consider the cumulative prejudicial effect of all material factors, including delay, the non-moving party's added expenses, and the extent of the moving party's pre-trial activities. Id.; see also Patten Grading & Paving, Inc. v. Skanska USA Bldg., Inc., 380 F.3d 200, 204 (4th Cir. 2004).

Because Plaintiffs offer nothing beyond delay to support their claim of waiver, they fail to meet their heavy burden in this case. Delay of more than a year is certainly significant, but delay alone does not establish actual prejudice. Microstrategy, 268 F.3d at 250. More importantly, delay outside of this legal proceeding will not support a finding of waiver. Thus, the lapse of fourteen months from January 2005, when Plaintiffs' attorney first contacted their supervisor, to March 2006, when this case was actually filed, cannot be properly charged against DUHS. Whether Defendant should have, at a much earlier time, notified Plaintiffs of the dispute resolution policy and arbitration requirement as a matter of fair and equitable treatment of its employees is not the issue before the Court. The issue is one of legal requirements, and Defendant has not waived the right to demand arbitration by failing to provide such information, which was not specifically requested.

-15-

Case 1:06-cv-00337-NCT-WWD   Document 9   Filed 12/13/06   Page 15 of 16

As for the other prejudice factors, Plaintiffs do not claim that they will bear extra expense as a result of arbitration or that Defendant's pre-trial activities are so extensive as to merit waiver. In fact, DUHS's arbitration clause unquestionably requires Defendant, not Plaintiffs, to bear the costs of arbitration. Further, Defendant, as the moving party, has only utilized the "litigation machinery" once, to file the motion to compel arbitration now before the Court. This activity is not inconsistent with an intent to arbitrate. Because Defendant has not forced Plaintiffs to respond to extraneous motions or do anything else that would affect their ability to fairly and successfully arbitrate their claim, they have not waived their right to compel arbitration.

**IT IS THEREFORE RECOMMENDED** that Defendant's motion to compel arbitration and stay the proceedings pending arbitration (docket no. 5) be granted, and the alternative motion to dismiss be denied.

_____
**United States Magistrate Judge**

December 13, 2006