IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| PAMELA MOYE and<br>MICHELLE CARTER, | )<br>)<br>) | |
| Plaintiffs, | )<br>) | |
| v. | )<br>) | 1:06CV00337 |
| DUKE UNIVERSITY HEALTH<br>SYSTEM, INC., | )<br>)<br>) | |
| Defendant. | )<br>) | |

MEMORANDUM ORDER

This matter is before the Court on Defendant Duke University Health System, Inc.'s ("DUHS") Motion to Stay Proceedings Pending Arbitration. [Doc. #5]. On December 13, 2006, the Magistrate Judge filed a Recommendation [Doc. #9] that DUHS's motion be granted. On January 2, 2007, plaintiffs timely filed objections to the Recommendation.

I.

Plaintiffs Pamela Moye and Michelle Carter are employed by DUHS as medical transcriptionists in the Pathology Department. Ms. Moye, who has been employed by DUHS since 1981, is the Office Coordinator for medical transcriptionists. Ms. Carter, who has been a DUHS employee since 1988, is the Senior Medical Transcriptionist. Ms. Moye and Ms. Carter are African American. On January 26, 2005, plaintiffs, through counsel, sent a letter to their supervisor

alleging that DUHS pays higher wages to white medical transcriptionists than to African-American transcriptionists. The DUHS Office of Counsel responded to plaintiffs' original letter as well as to a follow-up letter sent by plaintiffs' counsel. Neither of the letters from the DUHS Office of Counsel referenced a dispute resolution policy or procedure.

On March 31, 2005, Ms. Moye and Ms. Carter filed charges with the Equal Employment Opportunity Commission ("EEOC") alleging racially discriminatory compensation by DUHS. The EEOC issued a right to sue letter on January 24, 2006. Plaintiffs then filed an action in state court, which DUHS removed to this Court on the basis of federal question jurisdiction. After removal, DUHS filed the instant Motion to Stay Proceedings Pending Arbitration.

II.

As the basis for its motion, DUHS relies upon a *Dispute Resolution Policy*, which became effective on September 15, 2005. In support of its motion, DUHS has submitted the declaration of Mindy Kornberg, Assistant Vice President of Human Resources at Duke University. According to Ms. Kornberg's declaration, prior to September 15, 2005, Duke maintained separate dispute resolution procedures for exempt and nonexempt employees, as those terms are used in the Fair Labor Standards Act. As nonexempt employees, plaintiffs would have been subject to Duke's *Nonexempt (Biweekly) Employee Grievance Procedure* ("*Employee Grievance Procedure*") prior to September 15, 2005. Although

2

referenced in Ms. Kornberg's declaration, a copy of the *Employee Grievance Procedure* was not submitted as an exhibit. By Order dated May 11, 2007, the Court requested that DUHS submit a copy of the *Employee Grievance Procedure*. In compliance with this Order, DUHS filed a copy of the *Employee Grievance Procedure* on May 17, 2007.

Plaintiffs' counsel initially contacted Ms. Moye and Ms. Carter's supervisor regarding their complaints on January 26, 2005, approximately eight months before the *Dispute Resolution Policy* became effective. The EEOC complaint on which plaintiffs' action is based was filed on March 31, 2005, approximately six months before the *Dispute Resolution Policy* became effective. However, as noted above, DUHS based its motion to compel arbitration on the *Dispute Resolution Policy* rather than the *Employee Grievance Procedure* that was in effect at the time the dispute between these parties arose.

Accordingly, the Magistrate Judge considered only whether the *Dispute Resolution Policy* required plaintiffs to submit their claims to arbitration. In the Recommendation, the Magistrate Judge determined that the plaintiffs agreed to arbitrate their disputes and that their disputes were governed by the *Dispute Resolution Policy*, which should be given retroactive effect. While noting that DUHS had not submitted a copy of the *Employee Grievance Procedure*, the Recommendation also noted that "[i]f the arbitration agreement in an earlier version of the DUHS grievance policy already required arbitration of Plaintiffs' claims, it is

3

irrelevant whether the new policy should be given retroactive effect." [Doc. # 9 at 10].

While the parties have focused their briefing on whether the *Dispute Resolution Policy* should be applied retroactively and, if so applied, should require plaintiffs to have their disputes resolved through arbitration, it may not be necessary to resolve these issues. The dispute between these parties arose while the *Employee Grievance Procedure* was in effect. As discussed below, the *Employee Grievance Procedure* provides that employment disputes must be decided by binding arbitration. Therefore, it is necessary to determine only whether the *Employee Grievance Procedure* is enforceable as to plaintiffs and thus would require plaintiffs to submit their claims to arbitration.

III.

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, applies to arbitration provisions in agreements "involving commerce." 9 U.S.C. § 2. DUHS is engaged in interstate commerce by providing medical services, and an employment contract between Duke and one of its employees "involv[es] commerce" under the FAA. See, e.g., Solomon v. Duke Univ., 850 F. Supp. 372, 373 (M.D.N.C. 1993).

To determine whether an arbitration agreement is enforceable, courts apply the relevant state law principles governing the formation of contracts. Allied-Bruce Terminix Cos., Inc. v. Dobson, 513 U.S. 265, 281 (1995) ("States may regulate

4

contracts, including arbitration clauses, under general contract law principles and they may invalidate an arbitration clause upon such grounds as exist at law or in equity for the revocation of any contract.") (citation omitted). In addition, when determining if a valid arbitration agreement exists, courts must recognize the "liberal federal policy favoring arbitration agreements." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983).

North Carolina law governs the contract in this case. See Fortune Ins. Co. v. Owens, 351 N.C. 424, 428, 526 S.E.2d 463, 466 (2000) (holding that the law governing a contract claim is the law of the place where the contract was formed). For arbitration clauses to be enforceable, North Carolina requires offer, acceptance, consideration, mutual assent, and the presence of no valid defenses for contract formation. See Copy Products, Inc. v. Randolph, 62 N.C. App. 553, 555, 303 S.E.2d 87, 88 (1983); Snyder v. Freeman, 300 N.C. 204, 218, 266 S.E.2d 593, 602 (1980) ("The essence of any contract is the mutual assent of both parties to the terms of the agreement so as to establish a meeting of the minds.")

In this case, plaintiffs apparently agreed to be bound by the *Duke University Employee Handbook* ("*Employee Handbook*") and the *Employee Grievance Procedure* as a condition of their employment with DUHS; it is undisputed that plaintiffs each signed an acknowledgment form stating that they had received copies of both of these documents. [Doc. #5, ex. 1, attach. E, F]. The *Employee Handbook* provides that "[a]greement to the terms of the applicable grievance or

5

dispute resolution procedure . . . is a condition of employment and continuing employment." The *Employee Grievance Procedure* states:

> Any controversy or claim arising out of or relating to employment actions, any condition of employment or the application, meaning or interpretation of personnel policies or procedures as they affect work activities, and any claim based in whole or in part on federal, state, or local laws, whether statutory or common law, shall be settled in accordance with this procedure.

The procedure established for resolving such disputes is as follows. First, the employee discusses the matter with his or her supervisor. If the supervisor's response to the employee's complaint is not acceptable, the employee may request a hearing before the Department Head. The third step of the procedure involves review by the Associate Vice President of Human Resources. After these initial steps, the final step is impartial arbitration. The *Employee Grievance Procedure* further provides that the decision resulting from the arbitration is "final and binding between the parties as to all claims which were or could have been raised in connection with the dispute."[1]

The *Employee Grievance Procedure* seemingly provides that all employment disputes are subject to binding arbitration. Plaintiffs, however, have not had the opportunity to address whether there are reasons – other than waiver – why the

---

[1] Reciprocal promises to be bound by the results of the arbitration process constitute consideration. See Johnson v. Circuit City Stores, 148 F.3d 373, 378-79 (4th Cir.1998); see also Penley v. Penley, 314 N.C. 1, 16, 332 S.E.2d 51, 60 (1985) (noting that mutual promises are sufficient consideration to support a contract).

6

arbitration clause in the *Employee Grievance Procedure* should not apply to them. They may have ten days from the date of this Order to do so. DUHS may have five days to respond.

IV.

Plaintiffs have filed objections to the portion of the Recommendation regarding their assertion that DUHS has waived any right to arbitration by failing to invoke an arbitration clause in a timely manner. Having conducted a *de novo* review of the objections in the light of the Recommendation, it is determined that the Recommendation with respect to the issue of waiver should be adopted. As such, plaintiffs' opposition to the instant motion on the grounds of waiver is without merit.

V.

In sum, Plaintiffs have ten days from the date of this Order to address why the arbitration clause in the *Employee Grievance Procedure* should not apply to them. DUHS may have five days thereafter to respond.

This the day of June 5, 2007

      /s/ N. Carlton Tilley, Jr.
United States District Judge

7

Case 1:06-cv-00337-NCT-WWD   Document 16   Filed 06/05/07   Page 7 of 7